In the Matter of GAC CORPORATION
et al., Debtors.

Erwin NOVAK et al., Appellants,

v.

Frank J. CALLAHAN and Herbert S. Freehling, Chapter X Co–Trustees, Appellees.

Josh WESTON et al., Appellants,

v.

Frank J. CALLAHAN and Herbert S. Freehling, Appellees.

No. 76–131–BK–JCP–H.

United States District Court,
S. D. Florida.

Sept. 23, 1980.

Richard D. Greenfield, Sterling H. Schoen, Jr., Robert P. Frutkin, Gilbert Ashley, Bala Cynwood, Pa. and Susan Goldman, Miami, Fla. for Novak.

Bader & Bader, White Plains, N.Y., for Weston.

James E. Yacos, John Rodgers Camp, Jr., Miami, Fla., of counsel for Chapter X co—trustees.

Grant G. Guthrie, Michael A. Berman, Elliot M. Pinta, Washington, D.C., for S.E.C.

## MEMORANDUM OPINION

PAINE, District Judge.

This is an appeal from the Order Re Objections to Class Claims and Punitive Damages by Bankruptcy Judge Paul G. Hyman on December 21, 1978. Specifically, it was ordered that:

(1) The Trustees' objections and motions to strike with regard to Claim No. C–2516 (Josh Weston, et al.) are sustained and granted and said claim is hereby stricken and disallowed.

(2) The Trustees' objections and motion to strike with regard to Claims Nos. C–108, C–799, PC–453, and PC–4278 (Erwin Novak) are sustained and granted and said claims are hereby stricken and disallowed.

(3) The disallowance of the foregoing claims is without prejudice to the filing of amended claims by the individual claimants named and included in the foregoing claims, giving full particulars as to their individual transactions, provided that such amended individual claims must be filed with this Court within 45 days from the date of entry of this Order.

## BACKGROUND

On January 23, 1976 GAC et al. filed a Voluntary Petition for Arrangement under Chapter XI of the Bankruptcy Act. This proceeding was converted to a Chapter X reorganization on May 19, 1976.

Appellant, Erwin Novak ("Novak"), filed claims in both the GAC case and the Credit case on February 26, 1976 and amended both on July 27, 1976 (Claim No. C–108, amended by C–799 (GAC case) and Claim No. PC–453, amended by PC–4278, (Credit case)). The claims were filed on behalf of himself and all persons who purchased, during a period tentatively defined as August 1, 1971 to December 12, 1975, debt securities of Credit and who sustained realized or unrealized losses as a result of such purchases. Claimant annexed a class complaint alleging violations of the applicable securities laws. The class consists of both those who purchased and sold debentures as well as those who continued to hold these securities. The claim sought allowance as an unsecured claim of $30 million, including $10 million as punitive damages.

Appellants, Josh Weston, Morton Globus, Globus Inc., Employees Profit Sharing Fund, Josh Weston as Trustee, IR Associates, Helen LaCorte and Judy Weston as Trustee ("Weston") filed, on October 31, 1977, Claim No. C–2516 (GAC case), on their own behalf as purchasers of Credit debentures and on behalf of holders of such debentures and purchasers and sellers of said debentures during the period from about February 1974 to about December 1975. Weston claimed $100 million as a priority and secured claim.

On Nov. 10, 1977, Judge Hyman signed a Claims Bar Order.[1] The Order set a dead-

---

1. The Order stated in part:

THIS CASE having come before the Court upon the Application of the Chapter X Co Trustees for an order fixing claims deadlines with regard to certain classes of claims pertinent to these proceedings; and the Court having considered the aforesaid Application and the record in these proceedings, having heard the parties in interest at a duly–noticed hearing thereon on November 10, 1977, and good cause therefor being shown, it is accordingly

ORDERED, ADJUDGED and DECREED as follows:

1. All claims other than those specifically excluded by this Claims Bar Order, relating to the above--named Debtors and their subsidiaries on the attached listing, shall be filed with this Court in writing substantially in conformity with Official Bankruptcy Form No. 15 on or before *May 1, 1978.* (Claims may be filed at the Office of the Bankruptcy Clerk, Room 808, Ainsley Building, 14 Northeast First Avenue, Miami, Florida; or may be mailed and addressed as follows: Bankruptcy Court, P.O. Box 010230, Miami, Florida 33101.) Any claims required to be filed pursuant to the provisions of this Order, and not filed prior to *May 1, 1978,* shall be forever barred from participating or sharing in any distribution in these estates.

2. The following claims are excluded from the provisions of this Claims Bar Order and are *not* required to be filed within the aforesaid deadline:

A. Claims of debentureholders currently holding debentures issued by any of the above named Debtors, to the extent that such claims are based upon the amount due and owing (including interest) under the terms of said debentures currently held.

line of May 1, 1978 for the filing of claims. Excluded from the filing requirement were claims for the amount due and owing under the terms of the said debentures of debenture holders currently holding debentures issued by GAC Corp., GAC Properties, Inc., and GAC Properties Credit, Inc.

The mailed notice and the bar order itself formed the first page of a printed document, which included the statutory summary of the Trustee's report under Section 167 of the Chapter X, a document of approximately 70 pages including audited financial statements (pp. 36A–67A) and supplementary financial information.

This report included extensive information about the history of debtors, their financing, intercompany relationships and deficiencies in their operations and accounting methods. At pp. 10–18, under the captions "The Exchange Offer and Collapse," and "Intercompany Transactions", the Trustees' report described in detail the facts they discovered with respect to the disclosures or lack thereof in connection with an exchange offer made for the credit debentures, successful litigation in Delaware on behalf of debentureholders, and intercompany transactions that had been criticized or appeared to raise questions, enumerating at pp. 16–17 a wide variety of claims and counterclaims that could be asserted.

The text of the mailed notice was approved by the Bankruptcy Judge on December 30, 1977. Approximately 280,000 copies were mailed. Since appellants had filed proofs of claim before that date, they were included in the mailing list.

On December 4, 1978, the trustees filed an application with the Bankruptcy Court certifying that the Notice by Publication of the Claims Deadline, Plan Suggestion Deadline, and Summarization of Section 167 Investigative Report had been published worldwide in 54 newspapers.[2]

3. Except as provided in Paragraph 2 above, the provisions of this Claims Bar Order shall apply to all claims of whatever character against any of the above named Debtors and their subsidiaries on the attached listing, or their property, whether or not such claims are provable under Section 103 of Title 11 of the United States Code, and whether secured or unsecured, liquidated or unliquidated, fixed or contingent. *Such claims subject to this Order shall include, without limitation, any current or past debentureholders having claims against any of the above named Debtors on grounds other than the debt evidenced by a currently-held debenture instrument, and based upon any actions, conduct, or representations of any of such Debtors occurring prior to January 23, 1976;* [emphasis added] all present or past shareholders of GAC Corporation having claims against any of the above -named Debtors on grounds other than a stockholder interest evidenced by a currently held instrument of stock ownership, and based upon any any actions, conduct, or representations of any of such Debtors occurring prior to January 23, 1976; and all present or past lot purchasers having claims against any of the above–named Debtors based upon any actions, conduct, or representations of any such Debtors or predecessor corporations occurring prior to January 23, 1976 and not included within the express and specific language of their particular written Contract and/or Agreement for Deed.

4. The Chapter X Co-Trustees shall cause notice of this Claims Bar Order, in the form and manner hereafter to be prescribed by the Court, to be mailed to all parties in interest specified in Paragraph 5 of this Order on or before February 15, 1978. The Chapter X Co Trustees shall also cause publication of such notice to be printed in the Wall Street Journal (national edition) and New York Times (national and regional editions) and in newspapers of general circulation in the locations specified in Annex A hereto on or before February 15, 1978. Such notice by publication shall be deemed sufficient notice to bar claims, if not timely filed, by all parties not specifically provided notice by mail pursuant to Paragraph 5 of this Order.

5. Copies of the notice of this Claims Bar Order shall be mailed to all parties listed in the Amended Lists of Creditors and Stockholders filed herein by the Chapter X Co Trustees; to all parties who have filed proofs of claim in these proceedings; and to all present or deeded lot purchasers in all land sales projects of the Debtor, GAC Properties, Inc., and its subsidiaries, or any predecessor corporations.

6. All dealers in securities holding debentures and/or shares of stock of any of the GAC Debtors in "street name" shall transmit copies of the notices herein provided to the beneficial owners of said debentures and/or shares of stock on or before February 15, 1978, and the Chapter X Co Trustees are hereby authorized and directed to provide sufficient copies of the notices to such dealers sufficiently in advance of such date to permit mailing of the same on or before February 15, 1978.

2. In the Matter of:
GAC CORPORATION,

Debtor.

In the Matter of:
GAC PROPERTIES, INC., and
consolidated subsidiaries
per attached listing,

Debtors.

In the Matter of:
GAC PROPERTIES CREDIT, INC.,

Debtor.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 76–131–Bk- NCR–H
IN PROCEEDINGS UNDER CHAPTER X

NOTICE BY PUBLICATION OF CLAIMS
DEADLINE: PLAN SUGGESTION DEAD-
LINE: AND SUMMARIZATION OF
SECTION 167 INVESTIGATIVE REPORT

TO ALL CREDITORS, STOCKHOLDERS, AND OTHER PARTIES IN INTEREST OF
THE ABOVE-NAMED DEBTORS:

*NOTICE OF CLAIMS BAR ORDER AND CLAIMS DEADLINE*

This Court has entered its "Claims Bar Order" directing that all claims other than those specifically excluded by the Order, relating to the above–named Debtors and their subsidiaries, must be filed in writing substantially in conformity with Official Bk'y Form 15 on or before *May 1, 1978.* Any claims required to be filed and not filed by May 1, 1978 shall be forever barred from participating or sharing in any distribution in these estates.

The "Claims Bar Order" expressly provides that a number of categories of claimants need *not* file claims under the Order and such exceptions should be considered before claims are filed. Subject to such exceptions, however, the Order expressly further provides that the deadline *does* apply to "all claims of whatever character against any of the above–named Debtors and their subsidiaries on the attached listing, or their property, whether or not such claims are provable under Section 103 of Title 11 of the United States Code, and whether secured or unsecured, liquidated or unliquidated, fixed or contingent . . . [and] . . . shall include, without limitation, any current or past debentureholders having claims against any of the above- named Debtors on grounds other than the debt evidence by a currently–held debenture instrument, and based upon any actions, conduct, or representation of any such Debtors occurring prior to January 23, 1976; all present or past shareholders of GAC Corporation having claims against any of the above–named Debtors on grounds other than a stockholder interest evidenced by a currently–held instrument of stock ownership, and based upon any actions, conduct, or representations of any of such Debtors occurring prior to January 23, 1976; and all present or past lot purchasers having claims of any such Debtors or predecessor corporations occurring prior to January 23, 1976 and not included within the express and specific language of their particular written Contract and/or Agreement for Deed".

Claims may be filed at the Bankruptcy Court, Room 808, Ainsley Building, 14 N.E. 1st Ave., Miami, Fl., or may be mailed and addressed to: Bankruptcy Court, P.O. Box 010230, Miami, Fl. 33101.

*NOTICE OF OMNIBUS ORDER AND PLAN SUGGESTION DEADLINE*

This Court has entered its "Omnibus Order Re Plan of Reorganization" which includes provision that parties desiring to submit suggestions concerning a plan of reorganization to the Chapter X Co- Trustees shall submit the same in writing on or before *May 15, 1978.* Such suggestions may be submitted to the Co–Trustees at the following address: GAC Corp., 201 Alhambra Circle, Coral Gables, Fl. 33134.

*NOTICE OF SUMMARIZATION OF SECTION 167 REPORT*

The Chapter X Co–Trustees filed on December 30, 1977, a Summarization of their Section 167 Investigative Report dealing with the financial history, condition, and affairs of the Debtors. The information contained thereink is pertinent to, and should be considered with respect to, the matters set forth in the above-stated Notices.

*OBTAINING COPIES IF NOT RECEIVED IN MAILING*

Copies of the Orders and Summarization set forth above were mailed to all parties in interest as directed by the Court on or before February 15, 1978. Any person who has not already received copies of same by such mailing, and who believes he may have a claim or plan suggestion to file herein, may obtain such copies by request to the Co- Trustees at the address given above.

Subsequent to the May 1, 1978 Claims Bar, the Trustees on October 19, 1978, filed objections to the class claims of Josh Weston, et al. and Erwin Novak. The Trustees objected to the filing of claims on a class basis although they had no objection to the individual claims. The Trustees also moved to strike the punitive damage claim plead by Novak. Judge Hyman granted the Trustee's motion, the effect of which was to deny unliquidated claims asserted by Novak and Weston on behalf of an assorted class, defined in slightly different terms by each claimant, but in general comprising all persons who suffered losses on debentures of GAC Properties Credit, Inc., and to deny claims for punitive damages.

Claimants Novak and Weston have filed appeals which have been consolidated.

## Issues on Appeal

(1) In a Chapter X reorganization is it error for the Bankruptcy Judge to require all claimants to file individual claims where one claimant files a class action claim intending to represent all others with a similar claim?

(2) Did the purported members of the class receive notice, commensurate with notions of due process, to file their claims?

(3) Is a claim for punitive damages cognizable under Chapter X of the Bankruptcy Act?

## I. The Class Claim

It is the appellants' position that a class proof of claim constitutes the filing of a proof of claim on behalf of each member of the class. A number of Sections of the

BY ORDER OF COURT

Dated: Miami, Florida
February 15, 1978

| FRANK J. CALLAHAN | HERBERT S. FREEHLING |
|---|---|
| CHAPTER X CO–TRUSTEES | CHAPTER X CO–TRUSTEES |

LISTING OF CONSOLIDATED SUBSIDIARIES OF GAC PROPERTIES, INC.

GOLDEN GATES INN, INC.
GAC–GmbH GERMANY
COUNTRY CLUB INN, INC.
CAVES DEVELOPMENT CORP.
COLLGERRY REALTY, INC.
BRAND NAMES, INC.
POINCIANA GOLF & RAQUET CLUB, INC.
WEINCO, INC.
GAC PROPERTIES SALES OF DISTRICT OF COLUMBIA
GAC PROPERTIES SALES CORPORATION OF CONNECTICUT
GAC PROPERTIES, INC. OF ARIZONA
GAC GENERAL REAL ESTATE, INC.
CAPE CORAL CONSTRUCTION CO., INC.
GAC PROPERTIES SALES CORPORATION OF ILLINOIS
RIO RICA INN, INC.
RIVER RANCH ACRES CLUB, INC.
GAC PROPERTIES SALES CORPORATION OF NEW JERSEY
GAC PROPERTIES SALES CORPORATION OF NEVADA
GAC PROPERTIES SALES CORPORATION OF MARYLAND
GAC PROPERTIES SALES CORPORATION OF MASSACHUSETTS
REMUDA RANCE CLUBS, INC.
GULF AMERICAN CORPORATION OF ARIZONA, INC.

GAC PROPERTIES SALES CORPORATION
GAC PROPERTIES SALES CORPORATION OF OHIO
GAC PROPERTIES SALES CORPORATION OF NEW YORK CITY, INC.
PINE CORPORATION
KISSIMMEE CONSTRUCTION CORPORATION
SUN COUNTRY RESORTS, INC.
RIO RICO GOLF AND COUNTRY CLUB
RIO RICO CONSTRUCTION COMPANY, INC.
GAC PROPERTIES MARKETING, INC.
UTAH AMERICAN LAND CORPORATION
GAC PROPERTIES SERVICES, INC.
GOLDEN GATE GOLF AND COUNTRY CLUB, INC.
GAC PROPERTIES SALE CORP OF WISCONSIN
GAC PROPERTIES SALES CORP OF VIRGINIA
GAC PROPERTIES SALES CORP OF WASHINGTON
GULF AMERICAN CORPORATION
THE CLUBS OF RIO RICO, INC.
LEE INVESTMENT COMPANY, INC.
GULF AMERICAN LAND CORPORATION
BAREFOOT BAY CORPORATION
ANDREW HOTEL CORPORATION
FORT MYERS CONSTRUCTION
BAREFOOT BAY MANORS, INC.

Bankruptcy Act and rules are cited in support. It is argued that § 209 (section references are to the former Bankruptcy Act under which this case arises) allows claimants to be represented by another and that the need for quantification is satisfied since the class claim gives an amount to be set aside for the entire class. It is also asserted that under Rule 10–701 Part VII of the Bankruptcy Rules (Rule 723 applies, F.R. C.P. 23) are incorporated in an adversary proceeding. But there is nothing in the record below to suggest that an adversary proceeding was assertable (see Vol. 1A Colliers Bankruptcy Manual, 2nd Ed. § 701.03).

Section 196 permits the Bankruptcy Judge to prescribe the manner and fix a time within which creditors' proofs of claim shall be filed. Rule 10–401(b)(1) specifically permits the Court to fix a claims bar date. Thus, the Claims Bar Order conformed with this rule. (Whether there was compliance with 10–209, Notice to Creditors is the subject of Part II). Appellants have not supplied any authority which suggests that the Bankruptcy Judge cannot require all claimants to file individual claims as was done here.

It is apparent that the Claims Bar Order was issued for good reason. Judge Brown wrote in *Avery v. Fischer*, 360 F.2d 719 (5th Cir. 1966) that "Unlike ordinary bankruptcy . . . a reorganization covers creditors' claims of every conceivable kind . . . [The objective of the adoption and confirmation of a reorganization plan] cannot be accomplished unless there is precise knowledge about the nature and kind of claims of creditors and interest holders." Later the opinion says that the bankruptcy judge has complete discretion to determine "the method, manner, and place of filing as well as the time within which it is to be done." The requirement of individual filing by the claimants would facilitate obtaining the extent of these contingent and unliquidated security claims. Otherwise, the Court would be lacking in this "precise knowledge." After all, the asserted claims could have been significantly larger than the amount estimated by the appellants.

Thus far the requirement that class members file individual proof of claims before trial of a class action in a Chapter X reorganization has not been discussed at the Circuit Court level.[3] One authority suggests that if the corporation against which a Rule 10b–5 securities class action has been filed should file under Chapter X, the corporation should be severed from the civil case and a class proof of claim filed in the reorganization court. See Volume 4 Newburg: *Class Actions* § 7624. But it is noted that Newburg does not contest the authority of the judge to require the filing of claims by the individual class members.

Normally in a contested proceeding, as opposed to an adversary one, class proceedings per Rule 723 are not utilized. But reorganization Rule 10–901 makes Part IX of the Bankruptcy Rules applicable. And Rule 914 of Part IX, "Procedure in Contested Matters not Otherwise Provided for," permits a party to move to make Rule 723 apply in a contested matter. Of course, it is within the Judge's discretion whether he will direct that class procedure can be utilized, but in this case there is nothing on the record to indicate that appellants made such a motion under Rule 914.[4] The wording of the Claims Bar Order with regard to the

---

3. The Third Circuit in *S.E.C. v. Aberdeen Securities Co.*, 480 F.2d 1121 (3rd Cir. 1973) almost suggested as much when they held that class action proceedings are an inappropriate vehicle under those provisions of Chapter X which are utilized with the Investor Protection Statute.

4. Paragraph 6 of Judge Hyman's Order of December 21, 1978 found: The claims here in question were filed on July 27, 1976 (Novak); October 31, 1977 (Weston); and February 15, 1978 (Gudas). While the claims as filed purport to be "class claims", none of these claim-ants ever applied under the provisions of Bankruptcy Rule 914 (applicable under Rule 10 901) for the entry of any order making applicable the provisions of Rule 723 dealing with class proceedings. Moreover, since the time of the filing of these claims, none of the claimants has moved in any fashion for the entry of any orders of this Court specifying any form of notification to the members of the purported class differing in any manner from that given by virtue of the Claims Bar Order and the special publication notice.

988

debenture owners' claims certainly made it apparent that the Court had no intention of certifying appellants' class. Thus appellants were put on notice that the securities claims were not being treated as a class action. That would have been the appropriate time to assert their class claim position with a Rule 914 motion.

Appellant Novak makes reference to *In the Matter of Dolly Madison Industries, Inc.*, Nos. 70–354 to 70–367 (E.D.Pa.1970) (unreported case which is reviewed in Newburg) to support the proposition that the class proof of claim constituted a claim on behalf of the individuals. It is noted in that case the trustees did not contest the class proof of claim. And most importantly, *all* claimants were required to file Statement of Intention to Prove Claim within sixty days of the mailing of notice. As in the instant case those who filed untimely petitions were barred from participating in the reorganization. Also of interest in that case, the claimants sustained the expense of notifying the class members. Cf. *In re Nissan Motor Corporation Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977). In fact, the only significant distinction between *Dolly Madison* and *GAC* is the matter of notice–in *Dolly Madison* it was by individual mailing. Since the requirement that individual class members file proof of claims is concluded to be within the Bankruptcy

Judge's discretion, the issue becomes whether the notice by publication was adequate.[5]

Before discussing the issue of notice, it is first necessary to touch on appellants' argument that the trustees should be estopped from objecting to the class and that equity requires extension of the deadline for filing proof of claims.

■ As to the first, appellant asserts that while the class claim was filed quite early in the Chapter X proceedings, the trustees did not object until October 1978, over five months after the claims deadline. The trustees' position was manifested by the Claims Bar Order which specifically required the filing of individual claims. The trustees have merely objected to what the Claims Bar already forbid–that portion of the Novak claim which asserts contingent claims for other than the filing party.

■ Certainly § 119 and Rule 10–401 give the Court discretion to extend the claims bar date but there is nothing to indicate refusal to extend was an abuse of discretion. At the least some showing that there are claimants who attempted to file after the deadline would be appropriate. Cases on the amendment of claims, e. g., *In the Matter of Crown Cabinets, Inc.*, 488 F.2d 91 (5th Cir. 1973) where the trustee has been put on notice of an individual claim by a previous filing are distinguishable. More recently in *In the Matter of Commonwealth Corporation*, 617 F.2d 415

5. One of the prerequisites to a class action is that the representative party will fairly and adequately protect the interest of the class, F.R.C.P. 23(a)(4). Appellant Novak sought to represent both holders of GAC debentures and those who were formerly holders but have sold their holdings (sellers). All holders' claims with respect to their contract creditor status have been recognized. But in a reorganization where there are finite assets with which to compensate all claims, there is an obvious conflict of interest between holders' contract claim and the tort claim of sellers who have no contract claim. For example, a holder may be more interested in GAC being a going concern in order to receive periodic interest income while a seller may be only interested in liquidating his tort claim. The possible conflicts between holders and sellers are myriad and certainly suggest that a holder cannot represent a seller.

In *White v. Deltona Corp.*, 66 F.R.D. 560 (S.D.Fla.1975) the named plaintiffs made claims for compensatory and punitive damages which if awarded may have had an effect on the defendant's continued financial viability. This was found to be antagonistic to the interests of many of the purported class who had purchased lots in the defendant's communities and were more interested in growing, maintained communities.

The Court does not ignore the fact that the antagonism under R. 23(a)(4) is concerned with the subject matter of the suit and not the distribution of the fund as was explained in *Berman v. Narragansett Racing Association*, 414 F.2d 311 (1st Cir. 1969). But in a Chapter X proceeding the crux of the subject matter is the distribution and who will share how much of it.

(5th Cir. 1980) the Fifth Circuit again focused on the equitable powers of the Bankruptcy Court under Chapter X and specifically 10–401(b). There an amendment to a previous claim was filed where the amendment was "... for the same amount as the original claim and contains the same basic factual allegations as the original claim, together with the additional factual allegation [that further supports the claim]" at page 419. Yet, there is no substantial injustice in barring additional claims for a contingent liability which have not been previously filed. That the trustees may have been put on notice by appellants' claim in no way suggests that they had notice of the extent of any other claims that may have been extremely speculative. That the purported class members will be forever barred from asserting claims is an unfortunate necessity in completing a Chapter X proceeding. Policies for supporting finality are rampant within the law, whether it be in a reorganization or due to a statute of limitation or mandated by the doctrine of res judicata.

## II. Adequacy of Publication by Notice to Creditors

Having decided that it was within the Bankruptcy Judge's discretion to require individual proof of claims it is now necessary to determine whether notice by publication to sellers as opposed to notice by mail to holders constituted adequate notice under the due process standard. (It is not known to this Court how many sellers received mail notice due to being in another creditor status).

Judge Hyman, in his Order of December 21, 1978 made the following findings:

4. The special publication notice was ordered published twice, once on or before March 15, 1978, and once on or before April 1, 1978. It also included reference to the fact that copies of the Claims Bar Order, together with copies of a detailed Summarization of the Trustees' Investigative Report dealing with the financial history, condition, and affairs of the Debtors, had been mailed to debentureholders, lot purchasers and stockholders on or before February 15, 1978. The special publication notice advised that the Summarization of the Investigative Report included information pertinent to the claims deadline, and that parties who had not already received the same by the mailing could obtain copies by request to the Co–Trustees.

5. The Claims Bar Order was served by mailing copies of the Order and accompanying materials to over three hundred thousand persons between January 17, 1978 and February 15, 1978, and included mailing to all parties who had previously filed proofs of claim in these proceedings.

7. There also is no indication that the individual claimants included in the aforesaid claims gave any notification themselves to the purported class members, by mailing, publication or otherwise, concerning the filing of such claims. On the contrary, it was conceded by counsel present at the hearing that such notification had not been given. Therefore, the only notification given to such parties was by virtue of the aforesaid Claims Bar Order and special publication notice establishing the claims deadline of May 1, 1978.

8. In the circumstances, the Court determines that the special publication notice gave fair and adequate notification to all parties who might have been included within the categories enumerated in the aforesaid claims to the effect that individual proofs of claim were required to be filed with this Court.

9. While the issue was raised at the hearing as to whether "class claims" are in any sense permissible in accordance with the procedures provided for Chapter X under the Bankruptcy Act and Bankruptcy Rules, even if there had been any motion under Bankruptcy Rule 914 to have Rule 723 apply, the Court finds it unnecessary to determine that question since the purported class members were in fact given all requisite notice that would be practicable in the circumstances by virtue of the aforesaid special publication notice under the Claims Bar Order of November 10, 1977. Had a Rule 914 motion been timely made and allowed, the filing of individual proofs of claim pursu-

ant to an appropriate claims deadline notice nevertheless would still have been required, inasmuch as Chapter X procedures require the exact quantification of claims for purposes of the formulation of a plan of reorganization.

10. The Court finds and concludes that any additional parties having claims of the same nature as those asserted by the aforesaid individual claimants have already received due and adequate notice of these proceedings and of the necessity of filing their proofs of claim herein; that such notification and claims deadline was essential to the ongoing procedures for the formulation of a plan of reorganization herein on a timely basis; and that there is no prejudice to the rights of the parties by virtue of such procedures in that all such claims can be grouped together for hearing purposes as to any objections and/or allowance recommendations that the Co–Trustees may ultimately make with regard to such claims. Accordingly, the Court determines and concludes that the Trustees' objections to the class aspects of the aforesaid claims are well–taken and should be sustained, to the extent that such claims should be limited to the amounts claimed and asserted by the individual claimants therein included.

■ In the archetypical opinion concerning notice by publication vis–a–vis personal notice the Supreme Court utilized a balancing test to determine if the notice was reasonable under the circumstances. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950). Taken into consideration are the circumstances of the case, the practicalities and peculiarities involved, and how reasonably certain is it that the method of notice

will inform those who may be affected.[6] Another important factor for finding that notice by publication is adequate is if the claims are conjectural.

Appellant asserts a number of cases for the proposition that only personal notice would be adequate. But these are all readily distinguishable. In *City of New York v. New York, N.H. & H.R. Co.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953) the trustee was fully aware of the city's liens laid on specific parcels of property at least four years prior to beginning the reorganization. The creditor in *In re Harbor Tank Storage Co., Inc.*, 385 F.2d 111 (3rd Cir. 1967) was a possible warehouse receipt creditor with a contract claim. And in *In re Intaco Puerto Rico, Inc.*, 494 F.2d 94 (1st Cir. 1974) the creditor was known and readily identifiable for it had filed a counterclaim in a civil suit instituted by the debtor but had to withdraw under threat of contempt of the Bankruptcy Court. These cases in no way support the necessity for personal notice to persons that may have a possible tort claim.

■ Although the appellants' proof of claims put the trustees on notice to a securities fraud claim, that notice was exclusive to the appellants who by filing indicated a good faith belief that they had been defrauded. Any possible other claim by another who had already sold his debentures was sheer speculation. Moreover, the breadth of the published notices–in 54 widely read newspapers–drawn to the attention of G.A.C. creditors supports the adequacy of the notice. It is concluded that the notice by publication was adequate to bring to the attention of those who had previously owned but had sold their G.A.C. debenture the pendency of the G.A.C. reorganization.[7]

---

6. Although the expenses involved in giving notice can be a factor it would seem that in this case the appellants would have to bear the expense of identifying and mailing the Claims Bar Order, etc. *In re Nissan Corporation Antitrust Litigation*, 552 F.2d 1088 (5th Cir. 1977).

7. It is noted those who hold debentures received notice by mail while only those who sold were noticed by publication. If, as previously suggested (footnote 5), holders cannot rep-

resent sellers then the class which appellant Novak seeks to represent received individual notice. Although not briefed by the parties, appellants' standing to appeal the method of notice is questionable. E. g., see fn. 6 of *Zablocki v. Redhail*, 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978). That "personal stake in the outcome" necessary for standing would be more properly asserted by an intervening party who had not received personal notice. The antagonism between holders and sellers also

### III. Punitive Damages

The Bankruptcy's Court Order to strike the claim for punitive damages is adopted as this Court's opinion.[8]

### IV. Conclusion

The Bankruptcy Court's rulings are affirmed.

makes appellant an inappropriate representative to argue the seller's position as to notice. Since all holders have received personal notice by mail, it is probable that appellant lacks standing to pursue this on appeal. Nevertheless, appellant does have standing to assert that under class action procedure individual proof of claims by holders was not required. See U.S. Supreme Court decision in *Deposit Guarantee National Bank, Jackson, Mississippi v. Roper*, 445 U.S. 326, 100 S.Ct. 1166, 63 L.Ed.2d 427 (1980).

8. Judge Hyman wrote:

11. The Trustees have also objected to assertions included in certain of the aforesaid claims as to priority and/or security status, and have objected as well to inclusion of claims for punitive damages. With regard to priority or security, none of the claims alleges any recognized basis for such status, nor was any support for the same voiced at the hearing by the claimants. The Trustees' position in that regard is well -taken and is sustained, although nothing in this Order is intended to pre--determine ultimate questions of the appropriate classification and ranking of claims which will be determined in conjunction with the plan of reorganization, after appropriate notice and hearing, in accordance with Chapter X procedures.

12. With regard to claims for punitive damages, the Court agrees with the legal position taken by the Trustees as further supported in the memorandum submitted by the Securities and Exchange Commission, that such damages have no place in bankruptcy law and would necessarily be disallowed. The rationale for such damages is to punish the wrongdoer and therefore they are not allowable in situations in which innocent third parties will suffer. See, e. g., *Hayes v. Gill*, 216 Tenn. 39, 390 S.W.2d 213 (Tenn.1965) (probate); *Sullivan v. Billposters*, 6 F.2d 1000, 1012 (2d Cir. 1925) (probate); *Lane v. Schilling*, 279 P. 267 (Or.1929) (national bank liquidation receivership); Cf. 15 Am.Jr. *Damages*, § 285. The effect of allowing punitive damages in bankruptcy would be to punish the other creditors rather than the wrongdoer. The analogous policy against penalties under the Bankruptcy Act has been recognized in a case involving coercive default interest. *In re Tastyeast*, 126 F.2d 879, 881 882 (3rd Cir.) cert. denied 316 U.S. 696, 62 S.Ct. 1291, 86 L.Ed. 1766 (1941). Accordingly, the Court concludes that the motions to strike with regard to punitive damages should be granted.